PATTISON *versus* MOORE.

QUESTION IN THIS CASE.

*As to the acts of an agent—how far binding on the principal.*

1. Where one, having sold cotton, agreed that part thereof, when it arrived at the port to which shipped, should be re-weighed by his agents, and, if found deficient in quantity or quality, should be changed for other cotton of the vendor, in the agents' possession, so as to supply the deficiency; and it was impossible to supply the deficiency by cotton of the quality sold; and it was necessary to make it up by inferior cotton—it was held, in an action brought to recover the difference of price between the cotton agreed to be sold and that actually delivered—

1st. That the agents of the vendor, acting in good faith, had a right to supply the deficiency in quantity, by the selection of the quality in their possession.

2dly. That the vendor was bound by the act of the agent, and liable for the difference between the value of the cotton sold, and that delivered

3dly. That the agents of the vendor had a right to call a broker to their assistance, in ascertaining the value of the cotton supplied.

This action was assumpsit, in Madison Circuit Court, and was there commenced and prosecuted, by Pattison, against Moore.

The plaintiff declared on a contract, under which the defendant had sold to Pattison, one hundred and fifty thousand, nine hundred and thirty-nine pounds of baled cotton, amounting, at ten cents per pound, to fifteen thousand and ninety-three dollars and ninety cents. A part of this, to wit, ninety-three bales, not situated so as to be examined by Pattison, as to quality and quantity, Moore sold, delivered and war-

ranted the same to Pattison, as prime cotton, and weighing thirty-four thousand seven hundred and ninety-pounds. He agreed, that if there was a deficit in either respect, Messrs Lockhart & Anett, of New Orleans, should supply such deficit, by changing and taking from all Moore's cotton, in New Orleans, enough for that purpose; and that they should cause the same to be re-baled, to shipping order, at Moore's expense.

On the 27th August, 1829, said ninety-three bales were found, by Lockhart & Anett, to be greatly deficient, in both quality and quantity. They made such selections from all Moore's cotton, as they could, but were unable to supply said deficiencies; but found a loss, according to the then selling prices, at New Orleans, of four hundred and sixty-one dollars and sixty-seven cents. Pattison was also compelled to pay Lockhart & Anett, for changing, rebaling, &c., two hundred and thirty-eight dollars and thirty-three cents—both sums amounting to seven hundred dollars.

Second count, for money had and received to the plaintiff's use.

First, a bill of lading was read to the jury, without objection, for thirty-four bales, on the face of which, Moore warranted them to be prime cotton: if not, Lockhart & Anett to select and exchange, from all Moore's cotton; and to re-weigh, so as to supply all deficiencies, to complete ropes, &c.—repaired all at Moore's charge.

Next, another bill of lading was read, without objection, for forty-three bales, thirty-four of which were sold under a like warranty, as above: forty,

of the forty-three, to be re-weighed—the remaining three not to be re-weighed.

Next was a statement drawn up and signed by both the parties, of the 24th April, 1829, setting out the number of bales, their weight, &c., as being a full account of all the cotton sold by Moore to Pattison. It then recited, that ninety-three bales of the amount were to be re-weighed and changed for other, if not prime cotton, as warranted.

All the above testimony was excluded by the Court, on the ground that it was variant from the first count in the declaration, and inadmissible under the second count.

By the depositions of Lockhart, Anett and Hosey, it was proved, that Lockhart went in person, and procured the aid of Hosey, an experienced broker, of the city, to aid him, in making the examination, exchange, &c., and that Anett sanctioned and approved what was done. They all showed that the cotton warranted, was deficient in quality and quantity; and that Moore had no prime cotton there, to supply the deficits: that, after exchanging, &c. the cotton was less valuable than prime, according to the then prices at New Orleans, by four hundred and sixty-one dollars and sixty-seven cents.

The Court excluded all those depositions, on the ground, that when a firm is authorised to do an act, all the members of the firm must join in person, to do the act; and that the acts of one or more, in such case, are unauthorised, &c.

Argued by *Craighead*, for the plaintiff in error, and by *Robinson* and *Parsons*, for the defendants.

HITCHCOCK, J.—The declaration charges, in this case, that Moore sold to Pattison, one hundred and fifty thousand nine hundred and thirty-nine pounds of prime cotton, at ten cents per pound, to be delivered at N. Orleans, to Lockhart & Anett, commission merchants, in that city, who were the agents of both parties. That ninety-three bales of said cotton, amounting to thirty-four thousand seven hundred and ninety-five pounds were to be re-weighed, in New Orleans, and examined by Lockhart & Anett, and if found to be deficient in quantity or quality, were to be changed, and other prime cotton taken from other lots of Moore's cotton, then in Lockhart & Anett's hands, to make up, in quantity and quality, the amount of the ninety-three bales. That the ninety-three bales were greatly deficient, in quantity and quality.— That Lockhart & Anett did change and take from Moore's other cotton, all the prime cotton there was in their possession. That they were unable to make up the ninety-three bales, in quality and quantity; but that there was a deficit of four hundred and sixty-one dollars and sixty-seven cents, in value: and, that the cost of changing, &c., was two hundred and thirty-eight dollars and thirty-three cents, making seven hundred dollars. Moore having been paid for the cotton, at ten cents, and the costs of changing, &c., having been agreed to be paid by him, this suit was brought to recover that sum.

In support of this claim, proof was offered, as follows: An account current, signed by the parties, of the amount of cotton, to wit, six lots, on separate flat boats, bought by Pattison of Moore, at the foot of which is a memorandum, signed by the parties, to

the following effect, to wit: "The three last lots are to be re-weighed, viz, ninety-three bales—the difference allowed, if any; and, also, said ninety-three bales may be changed for others, if not prime, as warranted."

Two bills of lading were produced—one for thirty-four, and the other for thirty bales, on the back of which, signed by Moore, were instructions to Lockhart & Anétt, stating that "the within cotton was bought by Pattison of Moore, and warranted prime cotton—if not so, Messrs Lockhart & Anett will please select that number, from all Mr. Moore's cotton, and charge them to Alexander Pattison: they are, also, to be re-weighed, at Moore's charge."·

By the testimony of Lockhart & Anett, and one Hosey, a cotton broker, it appeared that those two lots, (nothing being said about the other twenty-nine, to make up the ninety-three,) amounting to sixty-four, were examined, and found deficient in quality, by one and a half cents per pound, below prime cotton. That Lockhart & Anett examined all the cotton in their hands, belonging to Moore, out of which sixty-four bales of the best quality there was, were selected, which proved of inferior quality to prime, by one and a half cents per pound—only sixteen bales of the sixty-four being retained, the residue being made up of other cotton belonging to Moore.

The account current, and the indorsement on the bills of lading, were all dated the 24th April, 1829, and they were all offered together; and the plaintiff moved the Court, to instruct the jury, that from them they might infer, that Lockhart & Anett were authorised to change the whole ninety-three bales.— This instruction the Court refused; but, on the mo-

tion of the defendant's counsel, instructed the jury, that it was the duty of the Court to determine the intention of the parties; and that, from the evidence offered, it was not the intention of Moore, to allow Dockhart & Anett to change more than the sixty-four bales; and that they must, therefore disregard, and reject as evidence, the bills of lading, the indorsements, and the account. The jury found for the defendant.

It is insisted, for the defendant in error, that the evidence was properly rejected, on the ground of variance between the declaration and the proof. That, by the declaration, prime cotton could only be substituted for that sent down : and that, in as much as the proof shews, that other cotton, not prime, was substituted; and the proof of the contract not stating expressly, that none but prime cotton could be substituted, the allegation and the proof do not correspond. That if the proof does warrant the ground, that only prime cotton could be substituted, then the agents have not complied with the contract—as they should either have substituted prime cotton, or, if that was not to be had, should have declared the amount of the deficit in quality, on the sixty-four bales that were sent; and not have substituted others, and then declared the amount of the deficit, on them.

So far as the proof of the contract, that prime cotton was to be substituted if it should be found that the cotton delivered was of inferior quality, I think there is no variance. Prime cotton was sold, and the account and the indorsements both state, that if not found to be prime, it was to be changed—and

the necessary inference is, that it was to be changed for prime cotton.

Have Lockhart & Anett, then, so far departed from their authority as to discharge the defendant?— They were the mutual agents of the parties, to carry the contract, which was executory, into effect—Moore's complaint is, that they substituted inferior cotton for that which was sent, which they had no right to do.

If Moore had furnished them with other cotton of prime quality, and they had failed to substitute it, he might have had cause of complaint; but, is he not estopped from urging this complaint, until he shall have shown that he had enabled his agents to comply with the contract?

It is to be remarked, that in this part of the transaction, Lockhart & Anett acted as the agents exclusively of Moore; and that, had Pattison been in New Orleans, in person, Moore would have been bound by this act, as much as if he had done it himself; unless he could establish fraud, on the part of Lockhart & Anett.

The cotton they did deliver, was of equal value with that sent down; and, as prime cotton was not furnished by Moore, is he not liable for the difference, as assessed by his agents?

If Moore can object to this execution of the contract, so can Pattison—for he was no more bound to receive substituted cotton, of inferior quality, than Moore was to deliver it: yet, I apprehend, that if Pattison had sued for the value of the sixty-four bales, on this ground, Moore could have safely insisted upon holding him to this act of Lockhart & Anett.

This case stands in a peculiar situation. Lock-

hart & Anett being the agents of both parties, Pattison and Moore must be considered as potentially present; and neither can complain of what was done, unless actual injustice can be shewn to have taken place.

The testimony of Lockhart & Anett, and of Hosey, the broker, shows that Anett did not personally attend to the examination of the cotton; but that it was done by Lockhart and Hosey, with the assent of Anett. This was objected to, and the Court was requested to instruct the jury, that if they found, that by the agreement, it had been permitted to Lockhart & Annett, as a firm to make the examination and selection; yet, the act of one of the firm, recognised by both its members, as the act of the firm, if the act itself was in pursuance of the agreement, would be sufficient: which instruction the Court refused to give.

On this point of the case, we think that it was the duty of Lockhart & Anett to transact the business of the agency, as such business was usually transacted by commission merchants; that, as such, they had a right to call to their aid the judgment of their cotton broker, and to take his opinion. They were not arbitrators to settle a dispute, but agents to execute a contract, their acts are open to examination by either party; and if injustice can be shewn, the party injured would be relieved: but this not being pretended, we think the instruction should have been given.

As to the instructions which the Court gave, relative to the twenty-nine bales, the balance of the ninety-three, upon which the whole testimony was rejected, my own opinion is, that it was erroneous. I think it should have been left to the jury, to de-

termine, from the evidence, what was Moore's intention, in relation to this part of the case. In this particular the Chief Justice does not concur; but, as we do not deem it material, in the view in which we consider the case, we do not reverse the case on that point.

The declaration charges, that the whole ninety-three bales were to be of prime cotton; and that, if found to be inferior to prime, it was to be changed. This the proof fully establishes; and the breach assigned, is broad enough to cover the proof: and, in actions of assumpsit upon parol contracts, when no written instrument is attempted to be set out, it is sufficient, if the proof substantially supports the allegations.

Though the allegation is, that the ninety-three bales were to be examined, and, if necessary, changed by Lockhart & Anett, and the proof is, that sixty-four were to be, this does not negative the fact stated.—Other proof, if necessary, may exist, to cover the whole ninety three bales: and, as a deficit is only claimed upon the sixty-four, we see nothing to object to, on that account.

We are, therefore, of the opinion that the testimony was improperly rejected, and that the judgment must be reversed and the cause remanded.

HOPKINS, J., not sitting.